**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Daniel Dennis Mehlos, | No. CV-20-02454-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Daniel Dennis Mehlos' application for disability insurance benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 20, "Pl. Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 23, "Def. Br."), and Plaintiff's Reply Brief (Doc. 24, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 19, "R."), and now affirms the Administrative Law Judge's ("ALJ") decision.[1]

## I.     BACKGROUND

Plaintiff filed an application for Title II benefits on November 30, 2018, alleging disability beginning February 28, 2016. (Doc. 19, R. at 18.) Plaintiff's claim was denied initially on February 1, 2019, and subsequently denied upon reconsideration on April 12, 2019. (R. at 18.) On May 18, 2020, Plaintiff appeared before the ALJ for a hearing on his

---

[1] Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

claim. (R. at 18, 483.) On June 18, 2020, the ALJ denied Plaintiff's claim. (R. at 30.) Plaintiff appealed this denial, but was subsequently denied by the Appeals Council on October 20, 2020, making the ALJ's decision the final decision of the Commissioner. (R. at 2.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: cervical spine disorder, lumbar spine disorder, bipolar disorder, history of schizoaffective disorder, anxiety and depression. (R. at 20.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from the alleged disability onset date through the date of the ALJ's most recent decision. (R. at 30.) The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments of 20 CFR Part 404, Subpart P, Appendix 1." (R. at 21.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"):

> [Plaintiff] has the [RFC] to perform medium work as defined in 20 CFR 404.1567(b) except the [Plaintiff] can perform simple, routine, and repetitive tasks; can perform simple work-related decisions; can tolerate few changes in a routine work setting, defined as performing the same duties at the same station or location day to day; can have occasional interaction with supervisors; can have occasional contact with co-workers with no tandem tasks or team type activities; and can have no contact with the public.

(R. at 23.) Accordingly, the ALJ found that "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. at 29.)

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

1    **III.    ANALYSIS**

2            Plaintiff raises two arguments in his challenge of the ALJ's decision. Firstly,

3    Plaintiff argues that the ALJ erred by rejecting the opinion of Plaintiff's treating

4    psychiatrist. (Pl. Br. at 13–17.) Secondly, Plaintiff contends that the ALJ erred in rejecting

5    his symptom testimony. (*Id.* at 17–23.) For the following reasons, the Court rejects

6    Plaintiff's arguments and affirms the ALJ's decision.[2]

7            **A.    Medical Opinion Evidence**

8            Plaintiff first argues that remand is required because the ALJ improperly rejected

9    the opinions of his treating psychiatrist, Dr. Coira. (*Id.* at 13.) Plaintiff also takes issue with

10   the ALJ determining the administrative medical findings of Drs. Gross and Paxton to be

11   only "partially persuasive." (*Id.* at 16–17.) In response, the Commissioner argues that the

12   ALJ properly explained the factors of supportability and consistency when determining the

13   persuasiveness of Dr. Coira's opinions and the administrative findings of Dr. Gross and

14   Dr. Paxton. (Def. Br. at 10, 16–17.)

15           In 2017, the rules for evaluating medical evidence were revised. For claims filed on

16   or after March 27, 2017, the revised rules apply. *See* Revisions to Rules Regarding the

17   Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (Jan. 18, 2017). As Plaintiff's

18   claim was filed on November 30, 2018, the revised rules apply to this case. (R. at 18.)

19   Under the revised rules, all evidence an ALJ receives is considered, but the rules create

20   specific articulation requirements regarding how medical opinions and prior administrative

21   medical findings are considered. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The

22   revised rules do not require an ALJ to defer to or assign every medical opinion a specific

23   evidentiary weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ determines

24   the persuasiveness of the piece of evidence's findings based on factors outlined in the

25   regulations. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

26

27   _____

[2] Because the Court affirms the ALJ's decision, discussion of Plaintiff's "credit-as-true"
arguments is unnecessary. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

28   1100-01 (9th Cir. 2014) (explaining that the first step in determining whether the credit-as-
true rule applies is whether the ALJ "failed to provide legally sufficient reasons for
rejecting evidence").

Recently, the Ninth Circuit definitively ruled that the revised regulations "are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship to the claimant." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). To that effect, the Ninth Circuit stated that its requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion is incompatible with the revised regulations. *Id.* Nevertheless, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* This means that an ALJ "must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. § 404.1520c(b), (b)(2)) (internal citation omitted) (alteration in original).

Under the new regulations, the most important factors considered by an ALJ are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). Supportability is defined as how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings." *Id.* § 404.1520c(c)(1). Consistency means "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). The ALJ should also treat opinions as more persuasive if they are more consistent with "other medical sources and nonmedical sources in the claim." 240 C.F.R. § 404.1520c(c)(2). Lastly, the ALJ can also consider, to a lesser degree, other factors, such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source actually examined the claimant. *See Woods*, 32 F.4th at 792.

### 1.    Dr. Roberton Coira

The ALJ did not err when assessing Dr. Coira's medical opinion. Dr. Coira opined

that Plaintiff had a variety of marked or extreme mental limitations. (R. at 27, 1786–91.)
This included marked limitations in maintaining socially appropriate behavior and extreme
limitations in understanding, remembering, interacting with others and completing a
normal workday and workweek without interruptions from psychologically based
symptoms. (R. at 27.)  Furthermore, Dr. Coira opined that Plaintiff remained "with severe
anxiety, episodes of mood swings, and irritability affecting his ability to interact with
others." (*Id.*) The ALJ found this opinion contradictory with the normal mental status
findings in the treatment record.  Specifically, the ALJ highlighted records indicating that
Plaintiff's depression/anxiety was stable and that he had no signs or symptoms of mania,
OCD, or psychosis. (*Id.* at 27-28.)  Moreover, the ALJ pointed to medical examinations in
the record indicating that Plaintiff was pleasant and cooperative, denied suicidal ideation,
had linear and organized thought processes and was alert and oriented. (*Id.* at 28.) Based
on this evidence, the ALJ determined that the record did not support "the degree of
limitations opined by Dr. Coira." (*Id.*)   Further, the ALJ found that Plaintiff's daily
activities in taking care of his sons, taking them to school, taking care of the dogs, shopping
in stores and driving, contradicted Dr. Coira's opinion that Plaintiff has extreme
limitations. (R. at 28, 434–42.) While a claimant is not required to be completely
incapacitated to be found disabled, an ALJ may consider the Plaintiff's daily activities to
determine whether they are "inconsistent with the alleged symptoms." *See Brown-Hunter
v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015).  The Court finds that the ALJ provided
sufficient contradictory evidence to support the treatment of Dr. Coira's opinion as
inconsistent with Plaintiff's overall medical record.

### 2.    Dr. Gross and Dr. Paxton

The Court also finds no error in the ALJ's assessment of Dr. Gross and Dr. Paxton's
administrative findings. The doctors opined, *inter alia*, that Plaintiff should be able to
understand, remember, and carry out simple instructions, should be able to make simple
judgments and work-related decisions, as well as deal with changes in a routine work
setting. (R. at 27.) The ALJ found these opinions to be only partially persuasive. (*Id.*)

Notably, the ALJ found that other evidence in the record indicated that Plaintiff's mental impairments are severe and that he had nonexertional mental limitations. (*Id.*) In other words, the ALJ found that Plaintiff was *more* restricted than Drs. Gross and Paxton had opined.  Therefore, it is difficult for the Court to follow Plaintiff's objections to the ALJ's treatment of Drs. Gross and Paxton's opinions. If anything, the ALJ's treatment of the opinions increased the likelihood of an award of disability benefits. For these reasons, the Court finds the ALJ did not err in its treatment of Dr. Gross and Dr. Paxton's medical opinions.

### B.    Symptom Testimony

Plaintiff also argues that, given the lack of malingering present, the ALJ erred by rejecting his symptom testimony without clear and convincing reasons. (Pl. Br. at 17.) The Commissioner counters that the ALJ did not err by rejecting the symptom testimony because the ALJ provided "very serious mental restrictions in [its] RFC finding and properly determined that the record did not support the full extent of Plaintiff's subjective complaints of debilitating and disabling symptoms." (Def. Br. at 17, R. at 23.)

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the . . . symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc) (internal quotation marks omitted)). Then, provided there is no evidence of malingering, the ALJ must evaluate the claimant's statements in context of (1) the objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). At this step, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (internal quotation marks omitted) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This requirement prevents an ALJ from "arbitrarily discredit[ing]" the claimant's subjective symptom

testimony. *Thomas*, 278 F.3d at 958.  Despite the "clear and convincing standard [being] the most demanding required in Social Security cases," *Garrison*, 759 F.3d at 1015 (internal quotation marks and citation omitted), the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between his testimony and his conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Thomas*, 278 F.3d a 958-59 (internal quotation marks and citation omitted). Should a district court find that the ALJ's specific, clear and convincing reasons are supported by substantial evidence, the court must not second-guess the ALJ's judgment, and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, the ALJ found no evidence of malingering and that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (R. at 24.)   Thus, step one of the analysis is satisfied.  As a result, the relevant inquiry is whether the ALJ's rejection of Plaintiff's symptoms testimony was based on specific, clear and convincing reasons supported by substantial evidence.  For the ensuing reasons, the Court finds that it was.

### 1.    Objective Medical Record

In rejecting Plaintiff's symptom testimony, the ALJ properly relied on objective medical evidence. The ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms was "not entirely consistent with the medical evidence . . . in the record." (*Id.*) In reaching this determination, the ALJ considered and detailed a litany of objective physical and mental medical examination results.

As to physical symptoms, the ALJ found that while both CT and MRI scans revealed mild degenerative changes in Plaintiff's spine, physical exam findings suggested that Plaintiff "retained functional abilities." (*Id.*) More specifically, the ALJ pointed to

numerous examination results that found Plaintiff had "no acute distress, had clear lungs to auscultation bilaterally, had regular heart rate and rhythm, had normal range of motion of the back as expected for age, had normal, full range of motion, had no edema in the extremities, had normal gait, had normal strength, tone, and reflexes, and had an intact sensory exam." (*Id.*) Furthermore, the ALJ pointed to examination results showing that Plaintiff "had 5/5 strength in all 4 extremities, had full active range of motion of all 4 extremities, had intact sensation and motor movement, and had a soft, nontender abdomen." (R. at 24-25.) In all, the ALJ considered six physical medical examination reports in finding that Plaintiff's symptom testimony was not entirely consistent with the objective medical record. (*Id.*)

The ALJ also considered objective medical reports regarding Plaintiff's mental impairments. The ALJ found that while certain records assessed Plaintiff as depressed, anxious, distracted, and with delusions and paranoia, multiple others indicated him as "pleasant and cooperative with normal mood and affect." (R. at 25.) Moreover, the ALJ listed results finding Plaintiff to have been exhibiting normal behavior, satisfactory attention span, logical, linear, goal-directed thought processes, and no gross deficits in memory or barriers to communication. (*Id.*) In addition, the ALJ discussed mental examination results showing Plaintiff's psychosis to have been resolved and that Plaintiff no longer had signs or symptoms of mania. (*Id.*) The ALJ's recitation of Plaintiff's most recent mental examination in the record indicated that Plaintiff "was adequately groomed, was polite, was cooperative, was pleasant, had normal speech rate, denied suicidal ideation, had linear/organized thought process/content, had adequate insight/judgment for treatment plan, and was alert and oriented." (*Id.*) In sum, the ALJ used nine mental examination results as context when evaluating the credibility of Plaintiff's symptom testimony.

Contrary to Plaintiff's assertions that the ALJ merely relied on boilerplate language to summarily reject the symptom testimony (Pl. Br. at 19.), the ALJ explicitly listed Plaintiff's symptoms before highlighting results that tended to contradict their claimed impact and severity. (R. at 24.)  The ALJ specifically "accounted for the combination of

[Plaintiff's] impairments and symptoms, such as pain, anxiety, panic attacks, irritability, mood swings, and difficulty concentrating" before detailing the objective medical evidence that contradicted the symptom testimony. (R. at 28.) The Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony, in part, because it was inconsistent with the objective medical evidence in the record. Rather, the ALJ properly analyzed Plaintiff's testimony in the context of objective medical evidence and provided specific examples of results tending to contradict Plaintiff's symptom testimony. *See Garrison*, 759 F.3d at 1018 (holding that an ALJ "must rely on examples to show why they do not believe that a claimant is credible").

### 2. Plaintiff's Daily Activities

The ALJ also properly relied on Plaintiff's daily activities when discounting Plaintiff's allegations. (R. at 28–29.) An ALJ may consider "many factors in weighing a claimant's subjective symptom testimony," including "the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see also* 20 C.F.R. § 404.1529(c)(3)(i) (permitting consideration of claimant's daily activities when weighing symptoms). A district court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The ALJ primarily focused on Plaintiff's self-reporting "that he takes care of his sons, gets the kids up and takes them to school, takes care of dogs, prepares his own meals, drives, shops in stores, spends time with family, and is able to count change and use a checkbook." (R. at 25.)  Where the "record reflects that the claimant has normal activities of daily living including cooking, house cleaning . . . [this] suggest[s] that the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008). While it is true that a "person's ability to do minimal household tasks" is not by itself indicative of that person's non-disability (Pl. Br. at 21), the ALJ did not err by merely considering Plaintiff's ability to conduct basic daily activities in weighing Plaintiff's

symptom testimony. As explored above, the ALJ considered many factors when assessing Plaintiff's testimony, and there is no evidence that the ALJ rejected the symptom testimony based solely on the daily activities evidence. A claimant's daily activities serve as proper context to an ALJ's credibility determinations, and the ALJ did not err in considering them here. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (explaining that an ALJ may discredit symptom testimony when daily activities contradict claims of a completely debilitating impairment).

The ALJ properly utilized objective medical evidence and Plaintiff's self-reported daily activities to contextualize Plaintiff's symptom testimony.  Having viewed it in the appropriate context, the ALJ found the testimony was not entirely consistent with the medical evidence and other evidence in the record. (R. at 24.) The Court finds that the ALJ provided specific, clear and convincing reasons that are supported by substantial evidence. As such, the Court will not second-guess the ALJ's judgment. *See Fair*, 885 F.2d at 604.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the June 18, 2020 decision of the Administrative Law Judge (R. at 30), as upheld by the Appeals Council on October, 20 2020 (R. at 2).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 26th day of August, 2022.

Michael T. Liburdi

Michael T. Liburdi
United States District Judge